Thank you, Judge Watford, and may it please the Court, my name is Mark Caldwell. I'm here to represent Ms. West this morning in this Social Security Disability Appeal. I will try to keep track of my own time, but I'm going to try to keep about five minutes for rebuttal if possible, depending on how many questions I get. This case can be resolved on the medical opinion evidence issue, and that's the issue that I'm going to focus on first. It is the agency's own examining physician upon whom I rely in this case for a finding of disability, preferably, of course, a remand for determination of benefits rather than for further administrative proceedings, since it was, of course, the agency's doctor who found the claimant effectively disabled, coupled with the vocational expert's testimony, of course. Instead, the ALJ in this case reached back all the way to the initial determination two-plus years prior to the decision to a non-examining physician who was not aware of the very significant results on that cervical MRI, of which the Court is well aware, that appears at 164 and 262 as duplicates. And that doctor, therefore, did not have the advantage not only of an examination, but of a review of the particular evidence. So of that doctor, Dr. Farrell, I would say three things. One, the opinion of that non-examining doctor standing alone, which it does, is not substantial evidence under this Court's precedence. Number two, even if that opinion were to be considered substantial evidence, the precedence of this that greater weight should be accorded to the opinion of an examining physician than a non-examining physician. And three, because that initial doctor, two years prior to the ALJ decision, did not have review of all of the evidence, it even fails the agency's standards for non-examining reviewers' opinions under Social Security Ruling 96-8P-2P, sorry. Go ahead, Your Honor. Breyer. What about the other non-examining physician? Is it Dr. Griffin? Sotomayor. Dr. Griffith. The district court said, Dr. Griffith, the ALJ did not rely on Dr. Griffith. And the Commissioner hasn't contested that, that conclusion. Breyer. I'm sorry. That the ALJ did not rely on Dr. Griffin's opinion? Sotomayor. Yes. And the district court said that. Breyer. Yeah, yeah. No, no. I think I agree that the ALJ relied mostly on Dr. Farrell. Sotomayor. I would go further than that and say exclusively Dr. Farrell. Breyer. Okay. But in terms of whether we were manned for an award of benefits or for further proceedings, I was trying to focus on Dr. Griffin. Is that, that doctor did have the benefit of the MRI, right? Sotomayor. He did. Breyer. And did he, I can't remember if it's he or she, did that doctor end up concluding that, you know, disagreeing with the examining physician as to the significance of what was shown on the MRI? Sotomayor. No, I don't believe it does at all. First of all, there would be no reason for Dr. Griffith's opinion to take precedence over that of Dr. Drinkwater's assessment based upon his own examination. Let's also keep in mind that Dr. Drinkwater, although he did quote the MRI verbatim, did say that there were other findings upon which he was looking at. Reflexes, for example, were zero to trace, which is a very significant finding when it comes to spinal cord dysfunction. So just because you have a, I'm trying to think of how I want to phrase this, just because you have non-substantial evidence stacked upon other non-substantial evidence doesn't make it substantial evidence. Breyer. Well, I guess I looked at it like this. I mean, the doctor, is it Drinkwater? I'm sorry if I get the doctor. Sotomayor. Drinkwater's examined. Breyer. Yeah, no, but that's the doctor that says, boy, I looked at this MRI and this is very abnormal. It's clearly consistent with the other things I'm looking at. And what the ALJ ended up saying in the key finding was there is no support whatsoever in the record for that conclusion that the MRI, you know, was very abnormal, right? So, no? Sotomayor. No. Breyer. Okay. I'm glad you stopped me. Sotomayor. Okay. Breyer. The ALJ, when she made that statement, referred exclusively to a prior plain X-ray. A plain X-ray pales by comparison to the MRI. Sotomayor. No, no, I understand. And that's why it seems to me that's the strongest argument you have for why we should reverse, right? I follow that. But in terms of why we would remain for an award of benefits, when perhaps there are, there is other evidence in the record that the ALJ just simply failed to cite that might have supported the statement that actually the finding that the MRI itself was very abnormal is just not supported. Breyer. I don't think under this Court's precedence the ALJ gets a second bite at the apple simply because she ignored significant evidence in the file. The best case on that is the recent Garrison case where the Court said an ALJ errs by simply ignoring evidence and by ignoring evidence, you effectively reject that evidence. Sotomayor. The ALJ did determine that your client lacked credibility as to the extent and severity of her impairments, correct? Breyer. Yes, that's a separate issue, but I'm certainly willing to discuss it. Sotomayor. And cited specific instances of demeanor and inconsistent statements. What's your take on that? Breyer. I didn't hear demeanor so much in the ALJ's decision, but she did talk about some inconsistent statements. And some of them were mischaracterizations, and some of them were irrelevant. For example, the ALJ said she did not give a full effort on a psychological examination that she was undergoing for purposes of that bariatric surgery. That's not true. It's just quite the opposite. She didn't try to make herself look worse. She tried to make herself look better because she wanted that surgery. She wanted to try to improve her medical condition, to which I think she should be lauded. Roberts. Why wouldn't that reflect negatively on her believability as to all sorts of other matters? It doesn't strike me as an unusual finding in the least. You lied about something, okay, sure, you tried to make yourself look better, but you lied. And now I have reason to doubt that you're telling me the truth about something else when it's relevant to you getting something that you want. It doesn't strike me as an odd inference to draw at all. I guess I could have two answers there. One, the standard here is clear and convincing reasons based upon the entire record. It isn't whether you're an EGLE scout. You know, have any of us not fudged something to get something we want? Does that mean we are liars about everything that we have ever talked about? No. So I don't think... But that's not the only lie or inconsistent statement that ALJ pointed to, though. No. She did. She did point to other ones. And I will say this to you. Some of those inconsistencies are bizarre, but they're irrelevant. She said she wanted to move here to be with her family, but she wanted to be with her husband. Well, last time I looked, your husband was your family. She said she went to church at one point in time, and there's something in the record that she went to church at another point in time. Under the Singh case that I cite in my brief, there has to be some relationship between the inconsistencies and the attempt to achieve, in this case, awarded benefits. And there just is no inconsistency that relates to the desire to obtain benefits in this case. Why there would be some inconsistencies, for example, about sexual abuse, that I can understand. I can understand a person not wanting to talk to somebody about sexual abuse in the treatment record where she went to the... But why is it not the point that Judge Watford is making? If you have multiple inconsistencies, it is either because the person is lying, or because the person is simply unreliable. Either way, it means you have to totally discount, or you could reasonably infer if there were enough inconsistencies. I can't rely on this person's testimony whatsoever. You can't rely upon testimony in some respects. That doesn't mean the person is not telling the truth about the severity of their medical condition. Well, it may or may not. Why is it not a reasonable inference that the ALJ could draw that, since she has numerous inconsistencies, and she has a medical condition, that the ALJ could draw that? And that occurs even when perhaps she doesn't have the same motive to lie. In a situation where she clearly would have a motive to lie, where she is an interested party, then it's unlikely that she is giving reliable testimony. Well, I think what I'm trying to get the focus here is on her testimony as to her medical impairments. And let's not forget Dr. Drinkwater and that very abnormal MRI. We also have some pretty bizarre things in here. She shaved her head to try to get rid of her headaches. When she went to the mental health treatment center, they said she had major depression with psychosis. You know, people with psychosis are not reliable. And I am not trying to defend some of those inconsistencies, but I wish you could. What I'm getting at is this. Are you saying that regardless of her testimony, even if it's assumed to be totally unreliable, you still prevail because of the other things you've been discussing? Or are you saying that we should treat her testimony about her symptoms as reliable? I'm saying both. That the fact that she was inconsistent in some... Well, then you must be a lawyer. No, because they're not inconsistent. I'm looking at my clock here because I want to be sure. She's an unstable woman who is giving some inconsistent testimony about, or not testimony, inconsistent information on irrelevant matters for reasons that I don't know either. But when we look at the medical evidence, especially the findings of the agency's own examiner, that lends credibility to her testimony regarding her medical impairments, and those are not inconsistencies. May I reserve the remainder of my time? Certainly. One last thing. Part of the finding when the ALJ is discussing Dr. Drinkwater, and gives a number of reasons for discounting Dr. Drinkwater's statements, she makes the point that the limitations that he posited, and she doesn't make this point, but I'm adding the limitations that your client testified to, are so severe that they would require her, the claimant, to be nearly confined to a bed or wheelchair. This is not the case because she is walking 30 minutes two times a day in addition to other activities. So what about that? It's the initial premise that's incorrect, that the limitations that Dr. Drinkwater gave, which were standing and walking for two hours and sitting for four hours, were so severe that a person would be in a wheelchair. That's just not true. It's facially incorrect. The limitations that Dr. Drinkwater gave are not so severe that a person would be confined to a bed or a wheelchair. Simple as that. All right. Thank you. We'll make sure you have a couple minutes for rebuttal. Why don't we hear from the Commissioner Slayer. Good morning. Good morning. Thank you. Katherine Bostrick on behalf of the Commissioner. I want to start with credibility in this case. Well, why don't you not start with credibility? Okay. Because it seems to me the much more difficult problem for your client, the Commissioner, is the ALJ's failure really to even acknowledge that there was this MRI and then to rely mainly, or according to your opponent, exclusively on a doctor who didn't even have the MRI available. So to me, that's the most significant problem. Why don't you address that first and then you can move to credibility. Okay. So Dr. Farrell did not have the MRI in front of him when he looked at it. But his opinion was consistent with other evidence, with the record as a whole. If you look at all of the... Hang on. Do you agree that the ALJ relied only on Dr. Farrell? Because if so, then we're not in a position to say, oh, well, you messed up in citing the wrong doctor, but we can look at all these other doctors, right? We have to just... At best, we would have to send it back, right? The ALJ also found that the objective findings from Dr. Griffith's evaluation supported the residual functional capacity. Although Dr. Griffith did assess the sedentary residual functional capacity, the ALJ specifically noted findings within Dr. Griffith's review that also supported the residual functional capacity finding. For instance, Dr. Griffith noted that West's headaches were poorly controlled, but she didn't have any other neurological deficits. Dr. Griffith reviewed the MRI findings, but observed she didn't demonstrate any sensory losses, which is central to whether or not she had cervical or reticulopathy. And he also opined that she could stand and walk for four hours in an eight-hour day and sit for about six hours. So although the ALJ didn't give a specific weight to Dr. Griffith's opinion, the ALJ did note that Dr. Griffith's findings would support the residual functional capacity. Well, I guess I'm still left bothered by the fact that the ALJ did not... in rejecting Dr. Drinkwater's... am I getting the name right? Yeah. ...conclusions, didn't even acknowledge that the MRI existed, and had then made the statement that there's absolutely no evidence in the record to support Dr. Drinkwater's finding that the... ALJ actually just misquotes it, says the very abnormal findings. What Dr. Drinkwater said was a very abnormal MRI. And the ALJ just never comes to grips with that at all. So I don't... I guess I'm not sure how your last answer responds to that problem. Well, so Dr. Drinkwater stated that the MRI was very abnormal, but the ALJ did specifically state that the record didn't support that. And although the ALJ cited to the x-rays, there was other evidence. For instance, the radiologist, Dr. Ram, reviewed the MRI and referenced only mild findings and no significant narrowing. The treating neurologist, Dr.... Did the ALJ rely on any of those doctors' opinions? No.  So that's, again, why, sure, you might be able to point to other doctors, and I'm not sure that they were actually examining that MRI for the same purpose. But even if they were, if the ALJ didn't rely on them in her decision, then doesn't our case law say that we're not permitted to look at them? I mean, you look at the record as a whole and whether or not it supports the ALJ's decision. And here, if you look at it... Well, you look at the reasons that the ALJ gave, right? That's what I'm saying. Tell me if I'm wrong. I understand our case law to say that we look at the four corners of what the ALJ said in terms of the reasons for rejecting and examining physicians' opinions. We don't get to look at the whole record if the ALJ didn't cite those parts of the record as reasons, right? Well, the ALJ did specifically cite the x-rays, which showed only slight to mild changes, and then also noted that Dr. Drinkwater's examination findings didn't support what he assessed. Dr. Drinkwater himself observed... But wait, wait, wait. If Dr. Drinkwater says that this MRI is very abnormal, right, it seems to me that would probably support the findings he goes on to make. If the ALJ doesn't in any way contend with his conclusion that the MRI itself was very abnormal, then I don't know how can you make those... I think it ultimately doesn't affect, you know, the outcome, because if you look at what else the ALJ did, the ALJ did look at Dr. Drinkwater's other findings, which didn't support his statement that the MRI was very abnormal. Did any doctor other than Dr. Drinkwater examine the MRI that's in the record? Dr. Ram, who's the radiologist, did interpret the MRI, and he referenced mild findings and no significant narrowing. Treating neurologist Dr. Mousamali opined that there was mild issues, but nothing of significance to be seen in the MRI. And although Dr. Mousamali was looking at her headaches and her Bell's palsy, he specifically references the cervical MRI and notes that nothing of significance is seen in it. And Dr. Drinkwater's own exam showed that she retained normal tone, normal strength,  He also found some decreased strength in her arms, but noticed that she, quote, gave way too easily, which may be a sign she wasn't giving her full effort, and that she retained full sensation. So although counsel relies on the reflexes, there's other evidence in the record showing that this wasn't as significant. The ALJ also found that although Dr. Drinkwater noticed that she had cervical or radiculopathy, no other doctor ever diagnosed her with this. And examinations from the same time period revealed that she had full strength in her upper extremities, and her pain management doctor, Dr. Chirbon, observed that her hand sensation was within normal limits. And, as the ALJ also observed, Wes was able to walk for 30 minutes twice a day as exercise in addition to all of her other activities, which also contradicted the extreme limitations assessed by Dr. Drinkwater. So I think, you know, going back to the credibility here, you know, she's asked that you credit her testimony as true, but if you look at, as you're pointing out, all the reasons in the record, there's multiple reasons why she's not a reliable source of information. And you just can't discount these as irrelevant. The ALJ found that she was not, that she, quote, may be prone to give untruthful or incomplete information in order to get something that she wants, which I think is clearly demonstrated in this case. She provided various different reasons for why she was not working. In January 2008, she stated she was fired from her job or quit due to confrontation. But in November 2009, she stated she did not work in order to stay home with her two children, even though the record showed she didn't have custody of either of her children. And at the hearing, she claimed she was unable to work due to back pain. So these are all, you know, they're not relevant. It's going to why or why she cannot work, and she's providing multiple reasons for why she can't work, none of which are supported by the record. And suppose we were to determine that the ALJ didn't give substantial reasons for discounting the drink water opinion, but that the ALJ's credibility determinations, findings, are supported by the record. Where does that lead us? I think it's then we have to remand for further proceedings. There's, you know, numerous inconsistencies here that have to be resolved. For instance, if we look at Dr. Griffith's statement that she remains capable of sedentary work, West is only 38 years old. That means we can remand, you know, we find she's capable of sedentary work, and then we require additional vocational expert testimony on what kinds of sedentary jobs that she can do. There's other inconsistencies that need to be examined. Again, repeating, if we conclude that the failure to rely upon Dr. Drinkwater or the attempt to distinguish his opinions was inadequate, but that the credibility determinations are supported by the record, that does not equal affirm. It equals remand. It equals remand for further proceedings, because there are differing opinions that need to be addressed. Thank you. Okay. Do we have any further questions? No, I don't think so. Okay, thank you. Thank you very much for your argument. Why don't we give plaintiff's counsel three minutes for rebuttal. Thank you, Judge Watford. Actually, I was going to ask for the rest of her time. I gave you a minute of her time. I guess I want to address what I think are some factual mistakes. The mild findings that counsel refers to were mild findings regarding the neural foramina or mild findings regarding the doctor who was evaluating Ms. West for migraine headaches. Those are not mild findings regarding compression of the spinal cord itself. Those were the very abnormal findings. So I think that has to be kept in mind in terms of the characterization of mild that does, in fact, appear in that report. The factor that Dr. Griffith gave a determination that was consistent with the ALJ's determination is factually incorrect. Dr. Griffith himself unfortunately didn't write down the ER number. Dr. Griffith himself said this woman was limited to sedentary work. The ALJ found she could perform light work. There's simply no support for one versus the other. The two both cannot be true. As to credibility, I don't want to go on and on and on about this, but please be reminded the standard that this court requires is clear and convincing reasons based on the record as a whole. There are some bizarre inconsistencies. Do they have anything to do with the fact that this woman is medically disabled? No, they don't. She obviously testified, correct? Yes. At the hearing? Yes. Are any of the inconsistencies the ALJ pointed to within the four corners of that testimony? No, not a one. And neither did she ask the plaintiff to. I know some of them are she told this doctor this, she told this doctor that kind of thing. But your read of the record is within its four corners, no inconsistencies in the testimony. No inconsistencies regarding her medical condition. That's what I meant. Absolutely. Okay. No inconsistencies there. Now. Let me ask, though, the same question that Judge Hawkins posed to your opponent. Let's say that we would agree with you on the drink water opinion that the ALJ aired there, but that the ALJ did not, did give clear and convincing reasons for finding your client not credible. You would agree, I guess, that we could not just remand for an award of benefits, right? We'd have to remand for further proceedings? I wouldn't even agree with that, and I'll tell you why. There are cases from this Court that say if a doctor relied upon the claimant's reports of symptoms and then the claimant was not credible regarding those reports, that's a basis for either affirming or remanding for further proceedings. That is not the same as what we were looking at here at all. There isn't a shred of record evidence that would support the idea that Dr. Drinkwater was relying upon any inconsistency reports given by Ms. West. I just want to end by making this point. How many times has this Court heard the commissioner argue that we sent the claimant to a doctor, the doctor did a thorough examination, and based on that, the claimant is not disabled, and on that basis, this Court should affirm? The commissioner can't have it both ways. Thank you. Thank you, Counsel. The case just argued will stand submitted.
judges: Rakoff, Hawkins, Watford